<div style="margin-left:2em; font-weight:bold">Obvious Danger.</div>

IV. As the jury were permitted under the instructions to find for plaintiff on either of two specifications of negligence, and as to one the evidence was insufficient to support a finding, the judgment will have to be reversed and the cause remanded for another trial. It is so ordered. *Brown* and *Small*, *CC.*, concur.

<div style="margin-left:2em; font-weight:bold">Two Theories.</div>

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.

---

WALTON BALLMAN, by H. R. BALLMAN, His Next Friend, v. H. A. LUEKING TEAMING COMPANY, Appellant.

Division One, March 2, 1920.

1. **NEGLIGENCE: Automobile Injury to Traveler: Stopping Car: Knowledge of Peril.** Where there is substantial evidence that the automobile truck could have been stopped within a few feet, that the night was clear and the driver could have seen plaintiff skating on the roadway at the intersection of two traveled streets, three blocks away, and that the driver neither slackened his speed nor

signaled his approach, whether he could have reduced his speed and stopped before he reached plaintiff, and whether he knew, or by carefully watching would have known, plaintiff was in peril from the truck if he proceeded farther, were questions for the jury to determine.

2. ———: ———: ———: ———: Contributory Negligence. Even though the inference from the evidence that the negligence of the little boy skating in the roadway at the intersection of two traveled streets contributed to his injury is unavoidable, if the evidence leaves the jury free to find that the driver of the automobile truck had a fair chance to avoid running over the boy, after his danger became apparent to the driver, or would have done so had he kept a proper lookout, the case is for the jury.

3. ———: ———: ———: ———: ———: Verdict Notwithstanding: Children Playing on Street. Testimony by the little boy that he looked west when at the north line of the east-and-west street and saw no vehicle coming and the fact that he was struck, by an automobile traveling eastward, at the end of the arc around which he skated in turning back northward in the north-and-south cross street, and testimony of a companion, five or six feet behind him, that as he entered the east-and-west street he saw the automobile a half block away, have a tendency to prove that the automobile was on the left side of the street, and that the driver had ample time to signal, to veer his machine to the south so as to miss the boy, or to stop, and is sufficient to authorize a verdict for plaintiff notwithstanding the boy's movements and neglect to watch out for his safety as participating causes of his injury. Admitting that if his companion saw the automobile the ten-year-old boy could also have seen it, the immaturity of the boy, the habits of boys to play on the streets, the thoughtlessness of children as compared to men, and the failure of the driver to signal, must also be considered, and it was proper to submit the issue of negligence of the driver in ways alleged in the petition other than in not doing what he could to avoid the collision, after he knew, or could have known, it was impending.

4. EVIDENCE: Experiments: Similar Conditions. For experiments made to determine whether certain signs painted on the automobile truck which struck the plaintiff were visible by plaintiff and his companion, conditions under which the incident in dispute happened must be the same in essential particulars as those under which the tests were made; and in this case, in which was admitted the testimony of several witnesses for plaintiff to prove, by way of experiments, that it was possible for the two boys to have read the sign, as they testified they did, it is held that the conditions were not sufficiently reproduced in the experiments for the result to be admitted in evidence.

5. **NEGLIGENCE:** Instruction: No Itemization of Specific Acts.  An instruction for plaintiff, which not only directs the jury to find for him if the specific acts of negligence declared on were committed, but also if the driver of defendant's automobile truck operated and propelled it in a manner which, under all the circumstances mentioned in evidence, was not careful and prudent, is erroneous.  A defendant charged with a negligent tort has the right to be informed what particular negligent acts plaintiff relies on, and the instruction should require the jury to find one or more of the specific acts which the evidence tends to establish.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun*, Judge.

REVERSED AND REMANDED.

*Bryan, Williams & Cave* and *Walter H. Nohl*, for appellant.

(1) The trial court should have sustained appellant's demurrers to the evidence. (a) The evidence showed no negligence on the part of appellant. Stotler v. Railroad, 200 Mo. 146; Berry on Automobiles (2 Ed.), p. 158; Battles v. Railway, 178 Mo. App. 624. (b) The plaintiff was guilty of contributory negligence as a matter of law. Stotler v. Railroad, 200 Mo. 146; White v. Railroad, 250 Mo. 482. (2) A witness should not be permitted to state his conclusions as to the relationship created by an unambiguous contract, or as to the contents of a written instrument. Benton v. Craig, 2 Mo. 198; Filley v. Talbott, 18 Mo. 416; State v. Salmon, 216 Mo. 523; Land Co. v. Spellings, 236 Mo. 39; Kuhn v. Schwartz, 33 Mo. App. 610; State v. Barnett, 110 Mo. App. 594; State v. Hall, 158 Mo. App. 125; Wise v. Insurance Co., 23 Mo. 80; Ellis v. Brand, 176 Mo. App. 383; State v. Huff, 161 Mo. 488. (3) The trial court erred in admitting respondent's experiment on visibility. Graney v. Railway, 140 Mo. 103; Chamberlain v. Mo., E. L. & P. Co., 158 Mo. 1; Riggs v. Railroad, 216 Mo. 327; State v. Bass, 251 Mo. 120; Helzemer v. Railroad, 261 Mo. 411; Osborne v. Eyster, 195 Mo. App. 523; Lloyd Chemical Co. v. Rag Co., 145 Mo. App. 689. (4) The

trial court erred in submitting to the jury a general charge of negligence and an issue not pleaded. Waldhier v. Railroad, 71 Mo. 516; Schneider v. Railroad, 75 Mo. 296; McNamee v. Railroad, 135 Mo. 447; McCarthy v. Rood Hotel Co., 144 Mo. 402; Allen v. Transit Co., 183 Mo. 32; Davidson v. Transit Co., 211 Mo. 361; Beave v. Transit Co., 212 Mo. 351; State ex rel. v. Ellison, 270 Mo. 653; Sommers v. Transit Co., 108 Mo. App. 324; Miller v. United Railways Co., 155 Mo. App. 528; McDonnell v. Columbia Taxicab Co., 168 Mo. App. 351; Clark v. General Motor Car Co., 177 Mo. App. 628; Young v. Dunlap, 195 Mo. App. 123.

*Frank Coffman* for respondent.

(1) As defendant did not stand on its demurrer at the close of plaintiff's evidence, that question must be answered in view of all the evidence; that which was offered by defendant as well as plaintiff. Klockenbrink v. Railway, 172 Mo. 683; McPherson v. Railroad, 97 Mo. 253; Riggs v. Railway, 216 Mo. 310; Eswin v. Railroad, 96 Mo. 294; Jennings v. Railroad, 112 Mo. 268; Riley v. O'Kelly, 250 Mo. 660; Lareau v. Lareau, 208 S. W. 243. (a) The evidence showed defendant to be guilty of negligence *per se*. Laws 1911, pp. 326, 327, subsec. 2, sec. 8; Battles v. Railway, 178 Mo. App. 623; Koenning v. Railway, 173 Mo. 725; Underwood v. Railway, 190 Mo. App. 407. (b) The cases—Stotler v. Railway, 200 Mo. 107, and White v. Railroad 250 Mo. 476,—cited and relied on by appellant, do not support its theory. The actions of minors are not measured in law by the standard applied to persons of mature years. Zalotuchin v. Railway, 127 Mo. App. 577; Brown v. Railway, 127 Mo. App. 499. (c) A minor is not necessarily guilty of contributory negligence although under the same circumstances an adult would be as a matter of law. Moeller v. Railways Co., 133 Mo. App. 75; Anderson v. Railroad, 161 Mo. 411. (d) When contributory negligence is not pleaded, and plaintiff's own testimony does not convict him of such, that de-

fense is out of the case. Taylor v. Railway, 256 Mo. 216; Collett v. Kulhman, 243 Mo. 591. (2) Appellant's assignment of error, that the witness, John E. Murphy, was allowed to state conclusions about the relations, covered by written contract, is untenable, as appellant pointed out no particular part of the testimony or conclusions, that it wanted stricken out. And the only part of the witness's testimony that could have been a conclusion was by the witness himself withdrawn and corrected. Hafner Mfg. Co. v. St. Louis, 262 Mo. 634; State ex rel. v. Diemer, 255 Mo. 346; Grimm v. Gamache, 25 Mo. 42. (3) The test was made under substantially the same circumstances as existed at the time of the accident and it was not error to admit it. Hunt v. City, 211 S. W. 676; Griggs v. Dunham, 204 S. W. 574. (a) But appellant cannot complain of the alleged error, if any, because the generality of its objection to the testimony was fatal to such objection. Clark v. Conway, 23 Mo. 442; Hafner v. St. Louis, 262 Mo. 634; State ex rel. v. Diemer, 255 Mo. 346; Grimm v. Gamache, 25 Mo. 42. (b) The motion to strike out came after the unfavorable answer, and was too late. Mann v. Balfour, 187 Mo. 304; Casey v. Gill, 154 Mo. 184; State v. Marcks, 140 Me. 668. (4) Respondent's instruction was within both the purview of the petition and the evidence and has been approved. Cool v. Petersen, 189 Mo. App. 725; Denny v. Randall, 202 S. W. 602; Brooks v. Harris, 207 S. W. 296; Selinger v. Cromer, 208 S. W. 871. (a) And it was not broader than the pleadings. Selinger v. Cromer, 208 S. W. 873; Lange v. Railroad, 208 Mo. 476. (b) And when one act of negligence, sufficient to authorize recovery, being alleged in the petition, and properly submitted to instruction, any error of the instruction in submitting another act of negligence was not prejudicial to defendant. Riggs v. Railroad, 212 S. W. 879; Moyer v. Railroad, 198 S. W. 842.

GOODE, J.—The plaintiff had his right arm crushed about the elbow, so as to leave it permanently stiffened,

by a motor truck alleged to belong to defendant com-
pany and while driven by an employee of it. The accident
occurred at the intersection of Seventeenth and Mul-
lanphy streets, in St. Louis, about seven o'clock and ten
minutes, in the evening of October 9, 1914. On the trial
of this action brought to recover damages for the injury,
a heavy verdict was returned in plaintiff's favor and from
a judgment entered thereon, the appeal was taken.

At the date of the accident plaintiff, a boy of ten
years of age, was skating with a companion on the road-
way of Seventeenth Street, a north-and-south thorough-
fare, paved with asphalt, in the block between Mullanphy
and Chambers streets, both east-and-west thoroughfares,
the latter being to the north. The two boys skated from
Chambers along the west side of Seventeenth Street to
Mullanphy, and while they were turning around at the
intersection of the two streets, intending to go back north
along the east side of Seventeenth Street, the left front
mud guard of the truck struck plaintiff, whirling him
about and throwing him down with his right arm under
the truck, so that the left rear wheel ran over it. At the
time the other boy, Milton Lammers, was four or five feet
behind plaintiff, and the latter was from six to eight feet ·
from the northeast corner of Seventeenth and Mullanphy
streets. The automobile was proceeding to its garage,
which was east of Seventeenth Street, and had traveled
eastward along Mullanphy for many blocks. Plaintiff
testified that when he reached the north curb-line of Mul-
lanphy Street he looked east and west and saw no vehicle
coming from either direction, heard no rumbling of
wheels, nor any signal by a horn, bell or otherwise. The
boy Lammers, who was six feet or so behind plaintiff, saw
the truck coming eastward and in the middle of the block
to the west; he heard no signal, but heard the rumble of
the truck, which was not very loud.

The driver testified he did not slacken speed as he
approached Seventeenth Street and thought he blew the
horn, because he generally did. Witnesses, including the
boys, testified the words "Rice-Stix Dry Goods Com-

pany'' were painted on the side of the truck, and were visible and read, either in whole or in part, by them. Some of them saw only the words ''Rice-Stix.'' This testimony was intended to show the truck which ran over plaintiff belonged to defendant and was operated under a contract between H. A. Lueking and' the Rice-Stix Dry Goods Company, entered into July 1, 1914, whereby said Lueking agreed to do the carting and draying for said Dry Goods Company for one year. Lueking, who was the president of the Lueking Teaming Company, said he did not know whether or not said company was incorporated at the date of the accident, but an attorney of Rice-Stix Dry Goods Company testified the company was on that date hauling for the Dry Goods Company, and permitting this testimony to go to the jury is complained of as an erroneous ruling. It should be said the attorney, when shown the contract, said he was mistaken, and that the hauling, when the accident occurred, was done by Lueking, individually. He said, however, he knew the Lueking Company did the hauling for his company from trying a case which arose previous to the accident where their automobiles were involved; had always tried cases ''as being the H. A. Lueking Company.'' Two trucks were provided by Lueking with the name ''Rice-Stix Dry Goods Company'' on them, to be used in performing the aforesaid contract. Lee Arens was the chauffeur who operated one of them and the one charged to have inflicted the injury in question, and John Amend drove the other. There is testimony *pro* and *con* about the visibility of the words on the truck, considering the light by which they must have been read on the evening of the accident. Two gas street lamps were burning at the crossing, one at the northeast and one at the southwest corner. The testimony is conflicting as to whether the evening was clear or misty at the hour of the accident. It was shown other trucks bearing the name ''Stix-Baer & Fuller Dry Goods Company'' were in use, and that one of them which passed down Mullanphy Street near the time of the accident, might have caused it, and the witnesses who testified ''Rice-Stix Dry Goods

Company'' was on the truck in question, might have mistaken the name. It was one defense, and some witnesses, including the chauffeur who operated the truck alleged to have hit the ·boy, testified that no truck belonging to defendant and operated by its driver, ran over any one the day of the accident. The bearing of other facts upon our conclusions will be understood best if stated in connection· with the propositions to which they are relevant.

Specific acts of negligence are charged in the petition, which may be epitomized as follows: First, in violation of Sub-section 2 of Section 8 of the Laws of 1911, p. 326, the driver of the automobile of defendant which ran over plaintiff, failed to diminish speed, or give timely signals by horn, bell or other device, as he was approaching plaintiff, who was then in the traveled part of Mullanphy Street, along which the truck was traveling and when it was approaching an intersecting highway. The portion of the statute counted on reads thus:

"Upon approaching a pedestrian, who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching an intersecting highway, or a curve or a corner in a highway, where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signalling.'' [Laws 1911, p. 327.]

Second, at the time plaintiff was injured, defendant's driver in charge of its automobile truck, was operating it on a public highway in an imprudent manner in this: he failed and neglected to slow the automobile down or give a timely signal when he was approaching an intersecting highway and also plaintiff, who was on the traveled part of said highway; and negligently drove and operated said automobile at said time and place, at a speed of twelve miles an hour, which was likely to and did endanger the life and limbs of plaintiff, in violation of Section 9, Laws of Missouri 1911, page 327. The section counted on in that paragraph of the petition reads:

"Every person operating a motor vehicle on the public highway of this State shall drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life and limb of any person: *Provided,* that a rate of speed in excess of twenty-five miles an hour for a distance of one-half of a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent."

Third, at the time and place plaintiff was injured, defendant's said driver was operating the automobile along a public street at a place much used for travel and where said driver should have anticipated persons were apt to be; and said driver, in violation of Sub-section 9, of Section 12, Laws of Missouri 1911, page 330, negligently failed to use the highest degree of care that a very careful person would use under like circumstances to prevent injury to plaintiff in this: he drove and operated said automobile at a high and dangerous rate of speed, to-wit, twelve miles an hour, along and across the streets, and neglected to give a timely warning to plaintiff by horn, bell, etc., or to give any signal of the approach of the automobile, after he saw, or in the exercise of the highest degree of care could have seen, plaintiff in a position of danger; that he failed to slow said automobile down or give any signal at all when approaching a highway when his view was obstructed. That paragraph declared on this part of the Act of 1911:

"Any persons owning, operating or controlling an automobile running on, upon, along or across public roads, streets, avenues, alleys, highways or places much used for travel, shall use the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury or death to persons on, or traveling over, upon or across such public roads, streets, avenues, alleys, highways or places much used for travel. Any owner, operator or person in control of an automobile, failing to use such degree of care, shall be liable to damages, to a person or property injured by failure of the owner, operator or persons in

control of an automobile, to use such degree of care, and in case of the death of the injured party, then damages for such injury or death may be recovered, as now provided or may hereafter be provided by law, unless the injury or death is caused by the negligence of the injured or deceased person, contributing thereto.''

Fourth, said driver, at the time and place of the injury to plaintiff, by the exercise of ordinary care, could have seen plaintiff in a position of peril, in time to have stopped said automobile, or to have slackened its speed sufficiently to avoid hitting and injuring plaintiff; but that said driver negligently failed to use ordinary care or make any effort to stop the automobile or slacken speed. That paragraph states a case of common-law negligence.

Defendant answered by a general denial.

Among the rulings assigned for error, one relates to an instruction granted at plaintiff's request and covering all the facts on which plaintiff relied for a verdict. The complaint of this instruction is that, besides setting out the specific acts of negligence charged in the petition and instructing the jury to return a verdict for plaintiff, if they found either of those acts was proved by the weight of evidence, it directed a verdict for him if the jury found ''defendant's driver propelled and operated said automobile in a manner which, under all the circumstances mentioned in the evidence, was not careful and prudent.''

Defendant also contends a demurrer to the evidence should have been sustained, because no negligence was proved against defendant or its chauffeur, and contributory negligence on the part of plaintiff was conclusively shown.

Another error alleged is the admission of testimony of several witnesses for plaintiff to prove it was possible to read a sign painted on an automobile which was driven past the scene of the accident, by way of experiment. This testimony was objected to because the conditions existing at the time of the experiment, February, 1917, a few days before the trial, were not the same as regards

the light and the color of the lettering, etc., as were the conditions at the time of the accident.

Still another assignment questions the instruction for plaintiff for particulars apt to confuse and mislead the jury, by assuming facts were established by the evidence when their existence was controverted. We deem these unfounded and will not enumerate them.

I. The case was for the jury on testimony adduced to prove the driver of the truck neither slackened speed as he drew near the crossing, nor signalled his approach; to prove, too, he could have reduced his speed or stopped before he reached plaintiff and after he knew, or, by watching carefully, could have known plaintiff was in peril from the truck if it proceeded unchecked. An expert chauffeur testified a truck weighing 6500 pounds and running over a dry pavement at the rate of ten or twelve miles an hour, could be stopped within twenty feet. The speed mentioned was that of the truck charged to have hurt plaintiff at the moment of collision, and though its weight was unproved, from the description of it the inference is fair that it weighed less and could have been stopped as soon as the one the witness mentioned. A chauffeur of defendant who, on the evening of the accident operated a truck precisely like the one in question, testified he was driving between eight and ten miles an hour and stopped within seven feet; that both trucks were empty. This witness said, too, he could see from Seventeenth to Fourteenth Street, or three blocks, and the driver of the truck in question said the night was clear when he turned in at the garage near the time of the accident.

*Stopping Automobile.*

No defense on the score of plaintiff's negligence was pleaded, and whether he contributed to his injury is of no moment unless the evidence, including his own, shows he did beyond inference to the contrary. [Hudson v. Railroad, 101 Mo. 13.] Even if that inference is unavoidable, the evidence left the jury free to find the chauffeur had a fair chance to avoid running over plaintiff, if the lat-

*Contributory Negligence.*

ter's danger, while he was circling round in Mullanphy Street, was apparent to the chauffeur or would have been had he kept a proper lookout. [McGee v. Railroad, 214 Mo. 539; Potter v. Railroad, 136 Mo. App. 145.]

II. What remains of the inquiry regarding the effect of plaintiff's movements and neglect to watch out for his safety as participating causes of his injury, is whether he should have been allowed a verdict on any finding other than neglect of the chauffeur to take measures to avoid running against him after his peril became visible.

·Humanitarian Rule.

Relevant to this point is plaintiff's testimony that he looked west when at the north line of Mullanphy Street and saw no vehicle approaching, also the circumstance of the truck catching him at the east end of the arc around which he skated in turning northward, and only six or eight feet from the northeast corner of the two streets—a fact tending to prove he was not run over from dashing into Mullanphy Street immediately in front of the truck; and this circumstance is the more significant because his companion, five or six feet behind him, saw the automobile as he entered Mullanphy Street, half a block away; a distance which afforded the chauffeur time to signal, to veer his machine to the south so as to miss plaintiff, or to stop. The testimony has a tendency, too, to prove the truck was travelling on the left, instead of the right side of Mullanphy Street, when plaintiff was run over. It is true that if plaintiff's companion saw the truck, plaintiff could have seen it also if he had looked intently; but considering his immaturity, the omission to signal to attract his attention, the habit of city children to play in the streets and the thoughtlessness of boys as compared with men, it was proper to submit the issue of negligence of the chauffeur in ways alleged in the petition other than not doing what he could to avoid the collision, after he knew, or should have known, it was impending. [Moeller v. United Rys., 242 Mo. 721, 727; Fry v. Transit Co., 111 Mo. App. 324.]

III.    No error was committed in admitting the testimony of the attorney for the Rice-Stix Dry Goods Company, that the Lueking Company, and not Lueking individually, was doing the hauling of the Dry Goods Company when the accident occurred. The witness vacillated in his statements, but they were for the jury and the objection that they were equivalent to letting the witness interpret the written contract is untenable. He offered no explanation of its meaning, but after it was exhibited to him, merely retracted, in a way, the statement made previously that the Lueking Company did the hauling. Enough testimony was adduced in support of this fact to go to the jury; and so appellant conceded, in effect, by remarking in its brief that "outside of the testimony of this witness, there was very little evidence for respondent on this point."

*Vascillating Testimony.*

IV.    Witnesses testified for both parties regarding the visibility of signs painted or hung on the sides of automobiles used in experiments conducted subsequent to the accident; and defendant contends the experiments for the plaintiff were made under conditions so dissimilar to those under which the witnesses who testified to reading "Rice-Stix Dry Goods Company" on the truck which ran over plaintiff, as to render inadmissible testimony of the result of the tests. For this species of evidence to be admissible, the conditions under which the incident in dispute happened, must have been the same in essential particulars as those under which the tests were made. [Riggs v. Railroad, 216 Mo. 304, 327; 1 Wigmore, Evidence, sec. 442; Greenleaf Evidence (16 Ed.), sec. 14b.] Otherwise, the occurrence or non-occurrence of an analogous result during the experiment, may mislead the jury into surmises that have no substantial basis in the facts, instead of aiding them to conclude the controverted incident was or was not possible, or probable. [See Lloyd Chemical Co. v. Rag Co., 145 Mo. App. 675, where the subject is examined and ex-

*Experimental Tests.*

cerpts from pertinent authorities quoted.] The issue in
the present case is, could the boys have read the words
"Rice-Stix Dry Goods Company," on the truck as it
passed down Seventeenth and Mullanphy Streets, when
they were at or near the crossing of those streets, and
could another witness, standing one hundred and seventy
feet north on the west side of Mullanphy Street, have read
them, as he testified he did. The experiment for plaintiff
was made February 19th, two years or more after the
date of the accident, but when the days were about the
same length as they were on said date, at the same hour
in the evening and by the same faint daylight and the
same degree of illumination from the street lamps. Other
conditions were different. A canvas painted green was
fastened to the curtains of a passenger autombile, six feet
above the surface of the street and the words "Rice-Stix
Dry Goods Company" were painted on the canvas in
white letters. The trucks of defendant with that sign on
them were more like express wagons, the lettering was in
gilt on the green sides of the bed, three and one-half feet
above the surface of the street, and the sides were sunk
an inch or so in a panel, and above the panel a sort of
flange or wing projected with an upward tilt. At least
one of the witnesses of the experiment observed the sign
on the side of the passenger automobile while it was mo-
tionless and before it was driven past these witnesses.
This no doubt enabled him to make out the words of the
sign more easily when it was driven past him during the
experiment. The conditions under which the witnesses
for plaintiff must have read the lettering on the truck the
evening of the injury, were not sufficiently reproduced in
the experiment for the result to be admitted in evidence.

V. The main instruction given at plaintiff's request
not only directed the jury to find a verdict for him if the
specific acts of negligence declared on had been com-
mitted by defendant, but also if the driver pro-
Instruction.    pelled and operated the truck in a manner
which, under all the circumstances mentioned in evidence,

was not careful and prudent. Such instructions have been condemned repeatedly, for the reason that a defendant who is accused of a negligent tort has the right to be informed what particular negligent acts the plaintiff relies on, so the defendant may prepare to disprove them, if they were not committed. When the petition is general in its charges of negligence, the defendant usually may move for specific averments; and if particular acts are charged, a recovery can be had only on proving the occurrence of one or more of those acts. The rule is expressed with perfect clarity in McManamee v. Railroad, 135 Mo. 440, 447.

Four cases are cited in plaintiff's brief to support the instruction, but neither of them does in the least. [Cool v. Peterson, 189 Mo. App. 717; Denny v. Randall, 202 S. W. 602; Selinger v. Cromer, 208 S. W. 871; Riggs v. Railroad, 212 S. W. 878.] In the first of those cases an instruction, submitting the facts for which a verdict might be returned for the plaintiff, mentioned, as the opinion said, "the precise specification of negligence relied upon in the petition." Another instruction stated, in an abstract way, the duty of the person operating an automobile on a highway to use the highest degree of care; and the court refused to reverse the judgment because of that instruction, as it could not have been misleading when read in connection with the one which required the jury to find the very acts of negligence alleged as the condition of a verdict for the plaintiff. In the second case the act complained of was driving an automobile close to and around the team and buggy of the plaintiff at a dangerous speed and carelessly running over the plaintiff's dog, which was near the team. The court instructed that it was the defendant's duty to use the highest degree of care that a prudent person would use under similiar circumstances while operating his automobile on a highway, and if the jury found the defendant, in passing the plaintiff, ran at an excessive speed near his buggy, without using that degree of care and by reason thereof killed the dog, the verdict should be for the plaintiff. The instruction

required the jury to find the defendant guilty of the acts of negligence charged to warrant a verdict for the plaintiff. In the third case the plaintiff, who had been struck by an automobile after he had alighted from a street car, alleged the defendant saw, or by exercising ordinary care could have seen, the plaintiff alighting from the car and crossing the street in time to stop his car without striking the plaintiff. The trial court advised the jury that if the defendant, by using the highest degree of care a very careful person would use under like or similiar circumstances, could have discovered the plaintiff's position in time to have avoided striking him, and she operated her said machine at said time and place at a high and dangerous speed, and failed to give a signal with her bell, etc., in time to enable the plaintiff to avoid being struck, etc. The instruction required the jury to find the defendant had been guilty of other acts of negligence than the one alleged, and of that one too, thereby imposing an unnecessary burden on the plaintiff. In the fourth of the cited cases, three careless acts were alleged, and the court, by its principal instruction, put the plaintiff's right to recover on a finding that the defendant was guilty of all three.

In the case at bar the erroneous clause of the instruction is separated from the rest by the word "or" as an independent ground for a verdict for plaintiff. It is apparent the cases cited for the soundness of the charge are inapt, and attentive study of them by counsel who wrote the brief would have saved this court the labor of the foregoing analysis.

The judgment is reversed and the cause remanded. All concur.